## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

JENNIFER M.,                     )
                                 )
    Plaintiff          )
                                 )
v.                               )          1:18-cv-00269-NT
                                 )
SOCIAL SECURITY ADMINISTRATION   )
COMMISSIONER,                    )
                                 )
    Defendant          )

## REPORT AND RECOMMENDED DECISION

On Plaintiff's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record and after consideration of the parties' arguments, I recommend the Court vacate the administrative decision and remand the matter for further proceedings.

## THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the August 23, 2017 decision of the Administrative Law Judge. (ALJ Decision, ECF No. 6-2, R. 19.)[1] The ALJ's decision

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. §§ 404.1520, 416.920.

Relevant to the instant appeal, the ALJ found that Plaintiff has severe, but non-listing-level impairment of both shoulder joints. (R. 21-22, ¶¶ 3, 4.) The ALJ concluded that Plaintiff does not have the ability to perform the weight-bearing demands of light- or greater-exertion work, but she has the residual functional capacity (RFC) to perform sedentary work, including work that involves frequent pushing, pulling, and overhead reaching with both upper extremities. (R. 24, ¶ 5.) Given this physical RFC, Plaintiff's vocational background (Plaintiff was age 42 on the date last insured and has a high school equivalency diploma), and the testimony of a vocational expert, the ALJ found that Plaintiff can perform substantial gainful activity, including the representative jobs of quality control, assembly, and electronics worker. (R. 28-29, ¶¶ 7-9.) Defendant, therefore, denied Plaintiff's claim for disability benefits. (R. 1, 30.)

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive

when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) did not find an additional severe impairment related to Plaintiff's left hand, (2) failed to find that Plaintiff's shoulder impairment equals a listing, (3) gave greater weight to the opinions of consultants rather than to the opinions of treatment providers in formulating Plaintiff's RFC, and (4) failed to give appropriate weight to Plaintiff's subjective report of symptoms.

### A.    Hand Impairment – Step 2

At step 2 of the sequential evaluation process, a claimant must demonstrate the existence of impairments that are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act.  20 C.F.R. § 416.920(a)(4)(ii).  The step 2 requirement of "severe" impairment imposes a de minimis burden, designed merely to screen groundless claims.  *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1123 (1st Cir. 1986).  An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* at 1124 (quoting Social Security Ruling 85–28).  In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis.  *Id.*  However, if error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an

3

omitted impairment imposes a restriction beyond the physical and mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue*, No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

According to Plaintiff, beginning in 2007, Plaintiff has experienced chronic neuropathic pain in her left wrist and hand secondary to placement of an IV line in her hand. (Statement of Errors at 6, 16, citing Ex. 12F, R. 624-26, and Ex. 8F, R. 484; see also Ex. 11F, R. 600-602.) On April 14, 2017, Peter Esponnette, M.D., performed an independent medical examination at the request of Plaintiff's counsel. Dr. Esponnette opined that Plaintiff cannot perform "firm gripping" with her left hand. (R. 484.)

The ALJ did not give weight to Dr. Esponnette's opinion to the extent it was inconsistent with the ALJ's RFC finding. (R. 26-27.) The ALJ did not credit Dr. Esponnette's finding regarding Plaintiff's grip strength, noting Dr. Esponnette's finding of 5/5 wrist and finger strength. (R. 27; see also R. 480.)

Given the medical evidence of record, the ALJ's assessment of Dr. Esponnette's opinion was not error. First, the ALJ's observation regarding the internal inconsistency in Dr. Esponnette's findings regarding Plaintiff's hand strength is reasonable. Perhaps more importantly, there is no persuasive evidence to suggest that Dr. Esponnette's grip strength observation/finding had more than a minimal effect on Plaintiff's general ability to work

or her ability to perform the sedentary jobs identified by the vocational expert. That is, Plaintiff has not demonstrated that the alleged error was material to the ALJ's step 5 finding.

**B.     Listing 1.02 – Step 3**

At step 3 of the sequential evaluation process, the Commissioner considers whether a claimant's impairments meet or equal the criteria set forth in the "listings" found in appendix 1 of the disability regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairments meet a "listing," the claimant is deemed disabled without any further analysis of the claimant's residual functional capacity to perform past relevant work or other work in the national economy. *Id*. § 404.1520(d); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A) ("The listings are so constructed that an individual with an impairment(s) that meets or is equivalent in severity to the criteria of a listing could not reasonably be expected to do any gainful activity."); 20 C.F.R. § 404.1525(a). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). However, if a claimant has an impairment identified in a listing, but the claimant does not meet one or more of the criteria of the listing, the claimant may still be found disabled at step 3 if the claimant has "other findings related to [his] impairment that are at least of equal medical significance to the required criteria." 20 C.F.R. § 404.1526(b)(1)(ii) (defining "medical equivalence").

Plaintiff argues her shoulder joint impairments equal Listing 1.02, major dysfunction of a joint. Listing 1.02 provides as follows:

1.02 Major dysfunction of a joint(s) (due to any cause): Characterized by

gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

or

B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

To meet the listing, therefore, Plaintiff must demonstrate not only that she had deformity of the shoulder joints shown in acceptable imaging studies, chronic pain, and limitations of motion, but also an "inability to perform fine and gross movements effectively." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.02(B).

Inability to perform fine and gross movements effectively means an extreme loss of function of both upper extremities; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

*Id.* § 1.00(B)(2)(c). "Pain or other symptoms may be an important factor contributing to a functional loss" under this listing, making it "important to evaluate the intensity and persistence of such pain or other symptoms carefully in order to determine their impact on the individual's functioning under these listings." *Id.* § 1.00(B)(2)(d).

The ALJ concluded that Plaintiff's shoulder impairment, while severe, was not sufficient to meet or equal the Listing because it did not prevent Plaintiff from performing fine and gross movements effectively. (R. 22.) The ALJ's determination is supportable. The finding is supported by the opinion of Fred Fridman, D.O., who noted in his consultative examination report of July 2016, that "[t]here appeared to be normal fine dexterous movements of the hands." (Ex. 4F, R. 392.) The ALJ also noted credible findings or reports that Plaintiff is able to dress adequately, drive, and perform various activities of daily living. (R. 22.)

## C.    Plaintiff's RFC

Prior to assessing a claimant's ability to perform any past relevant work (step 4) or the claimant's ability to transition to other substantial gainful activity (step 5), the ALJ must assess the claimant's residual functional capacity (RFC). At this stage of the process, the claimant must demonstrate the extent of her functional impairment, which is generally expressed, in positive terms, as the amount of functional capacity remaining for work activity. 20 C.F.R. § 404.1520(e). *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (observing that, prior to step 5, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so").

The ALJ's task is, first, to determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the limitations alleged by the claimant. The ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional capacity to perform work-related activities. 20 C.F.R. §§ 404.1527,

404.1529. The claimant's subjective report of symptoms and the extent to which the medical record, including expert opinion evidence, supports the subjective report of symptoms, are thus the focus of the ALJ's RFC analysis.

Plaintiff asserts that the limitations caused by her bilateral shoulder impairment are more severe than found by the ALJ. In 2003 – 2004, Plaintiff underwent two surgical procedures related to left shoulder anterior dislocations (the first consisted of an anterior capsular shift; the second was a Bankhart repair).[2] (Statement of Errors 4-5; see also Ex. 11F, Eastern Maine Medical Center records.) In 2010, Plaintiff dislocated her right shoulder and the progress of this injury eventually resulted in a right anterior capsule labral repair due to MRI showing labral injury with adjacent cartilage loss. (Ex. 11F. R. 624, 627, 648; Ex. 12F, R. 652 (operative report).) Post-operative MRI noted "moderately extensive cartilage loss and the articular surface of the glenoid as well as the articular surface of the superior margin of the humeral head." (Ex. 13F, R. 680.)

More recently, Plaintiff presented at St. Joseph's Hospital with complaints of worsening acute pain, focusing on the left shoulder. (Ex. 13F, R. 683.) A left-sided MRI in 2016, in part referencing a 2014 MRI, "again show[ed] extensive ferromagnetic artifacts, predominantly anteriorly," including "ferromagnetic artifact anterior inferior body glenoid labrum" likely from screws situated in this area, a "progressive increased signal distal supraspinatus tendon," the suggestion of "at least a partial thickness tear near the subacromial region," and further atrophy of the supraspinatus muscles and subscapularis

---

[2] Upon a 2014 x-ray Dr. Michael Pancoe, M.D., found "two surgical screws extending to the left scapula slightly medial to the glenoid." (R. 639.)

muscle and tendon since 2014.  (Ex. 2F, R. 362-63.)

In July 2016, Dr. Fridman conducted a consultative examination for Disability Determination Services.  (Ex. 4F.)  According to Dr. Fridman, Plaintiff exhibited 5/5 strength with the exception of her bilateral deltoids, which he rated as 3/5 secondary to pain.  (R. 392.)  Dr. Fridman's report did not differentiate among the muscles involved in shoulder movement.  Dr. Fridman found Plaintiff "able to lift, carry, and handle light objects," and able to "dress and undress adequately well."  (R. 393.)  He assessed a range of motion limitation of 90 degrees bilaterally with abduction and forward flexion.  (*Id.*)  He found Plaintiff would have limitations performing overhead activities and carrying anything greater that 20 pounds frequently and 30 pounds occasionally.  (*Id.*)

In April 2017, Dr. Esponnette, M.D., assessed a 4/5 strength in testing related to shoulder flexion, abduction, internal rotation, and external rotation with a "give-way component" coupled with "grimacing by the patient and frequently reporting discomfort." (Ex. 8F, R. 480.)  Plaintiff tolerated only 120 degrees of flexion and abduction.  Dr. Esponnette noted an audible click at 80 degrees of abduction on the right side, and moderate crepitus (grating/cracking/popping sounds) on the left side at a similar location. Subsequently, Plaintiff's left shoulder also exhibited an audible click sound and Plaintiff expressed extreme discomfort. (R. 481.)  Dr. Esponnette also assessed an "extremely positive" apprehension sign, a positive impingement maneuver bilaterally at 80 degrees, and poor tolerance of a compression rotation.  (*Id.*)  Based on his findings, Dr. Esponnette opined that Plaintiff's work activity should not involve any overhead reaching or reaching that would require movement of her elbows "far" from her torso.  (R. 484.)  Plaintiff's

primary care provider, David Rawcliffe, D.O., concurred with Dr. Esponnette's findings. (Ex. 22F, R. 872.)

On July 22, 2016, Archibald Green, D.O., reviewed the then-existing medical evidence on behalf of Disability Determination Services. (Ex. 3A.) Dr. Green opined that Plaintiff can occasionally lift and/or carry objects weighing as much as 20 pounds, and frequently lift/carry objects weighing 10 pounds. Dr. Green recognized that Plaintiff's exertional capacity is restricted in that she is able to push/pull hand controls on a frequent basis, but less than constant. (R. 112-13.) Dr. Green also noted a manipulative limitation related to overhead work. In Dr. Green's view, Plaintiff is able to engage in overhead reaching on a frequent basis. (R. 113-14.) Dr. Green's opinion informed the Social Security Administration's initial denial of Plaintiff's claim. On September 28, 2016, Arvind Chopra, M.D., reviewed the medical evidence of record in connection with Plaintiff's request for reconsideration. (Exs. 5A, 6A.) Dr. Chopra found the physical RFC assessed by Dr. Green "was reasonable and reaffirmed as written." (R. 133, 151.)

The ALJ gave great weight to the opinion shared by Drs. Chopra and Green (R. 26), neither of whom examined Plaintiff. Drs. Chopra and Green relied on the medical evidence of record, including Dr. Fridman's report of physical examination. The ALJ, however, did not adopt their opinion entirely; he found Plaintiff had a capacity for sedentary exertion rather than light exertion. (*Id.*) While the ALJ noted that "the limitations [Dr. Fridman] opined are consistent with the physical exam findings" (*id.*), the ALJ rejected Dr. Fridman's opinion that Plaintiff has a capacity for medium exertion, did not address Dr. Fridman's finding of a limited range of motion of 90 degrees, and did not assign any

particular weight to Dr. Fridman's opinion. Finally, the ALJ gave "little weight" and "partial weight" to the opinion shared by Drs. Esponnette and Rawcliffe, who assessed a capacity for less than sedentary exertion, but also a significant reaching and overhead work restriction. The ALJ explained that the opinions were not consistent with "physical exam findings of 5/5 and 4/5 strength throughout." (R. 27.) The ALJ further explained that he rejected the opinions based in part on the weight the ALJ gave to the consultative examiner, Dr. Fridman. (R. 27.)

According to the applicable regulations, the Social Security Administration ordinarily will "give more weight" to opinions provided by treating sources than to opinions offered by non-treating sources. 20 C.F.R. § 404.1527(c)(2). In particular, "controlling weight" is given to "a treating source's medical opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* In addition, with respect to any expert opinion, generally more weight is given to the opinion of a source who has examined the claimant. *Id.* § 404.1527(c)(1). Consistency with the overall record is also a consideration. "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [Defendant] will give to that medical opinion." *Id.* § 404.1527(c)(4).

Although the Commissioner must give "good reasons" for rejecting a treating source's opinion of a claimant's RFC, 20 C.F.R. § 404.1527(c)(2), the ALJ does not have a similar obligation with respect to the opinion of an agency consultant or a one-time

consultant hired by the claimant. *Bowie v. Colvin*, No. 2:12-cv-00205-DBH, 2013 WL 1912913, at *7 (D. Me. Mar. 31, 2013) (one-time examining consultant not subject to treating source rule). Thus, the administrative process required only that Dr. Esponnette's findings be considered with the longitudinal treatment record for purposes of the RFC assessment. 20 C.F.R. § 404.1513a, 404.1517, 404.1519a. Dr. Esponnette's views, however, were adopted by Dr. Rawcliffe, who was in a treating relationship with Plaintiff. (R. 872.)

Finally, where the non-examining agency expert(s) reviewed the material evidence contained in the medical record, and the record does not contradict their opinions, the agency experts' RFC assessments can carry substantial evidentiary weight. *Alazawy v. Colvin*, No. 2:16-cv-240-JHR, at *6 – 7 (D. Me. Dec. 26, 2016). Moreover, this Court has observed that "[t]here is no hard and fast rule requiring renewed evaluation by a consulting expert every time a disability claimant … obtains new diagnoses in the interval between the initial DDS consultant's RFC assessment and the date of the administrative hearing." *Bachelder v. SSA Comm'r*, No. 1:09-CV-436-JAW, 2010 WL 2942689, at *6 (July 19, 2010), *report and recommendation adopted*, 2010 WL 3155151 (D. Me. Aug. 9, 2010). *See also Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule." (citations and internal quotation marks omitted)).

Although the ALJ's finding of a capacity for frequent reaching and overhead work is supported by the opinions of Drs. Chopra and Green, the ALJ did not give good reasons to reject the opinion of Dr. Rawcliffe, whom the ALJ acknowledged was Plaintiff's primary treating physician. (R. 25, 27.) When assessing the opinions of Dr. Rawcliffe and Dr. Esponnette, whose recommendations Dr. Rawcliffe adopted (R. 872), the ALJ did not sufficiently explain the reasons for rejecting the findings as to Plaintiff's ability to reach and perform overhead work. In fact, when discussing Dr. Rawcliffe's opinion, the ALJ discussed Plaintiff's ability to lift, but did not discuss Plaintiff's ability to reach. In his assessment of Dr. Esponnette's opinion regarding Plaintiff's ability to reach, the ALJ merely stated he gave more weight to the agency consultants as their limitations were consistent with physical exam findings. (R. 27.) The ALJ, however, did not identify the physical exam findings he relied upon in that assessment. Given that Dr. Rawcliffe adopted Dr. Esponnette's limitations, the ALJ's explanation does not constitute a good reason. Of further concern, while the ALJ described Dr. Fridman as "an examining acceptable medical source," (R. 26), and appeared to rely on Dr. Fridman's opinions – he described Dr. Fridman's limitations as "consistent with the physical exam findings (R. 26) – he did not incorporate in Plaintiff's RFC Dr. Fridman's finding that Plaintiff was limited in performing overhead activities.[3] Instead, the ALJ determined that Plaintiff could perform "frequent bilateral overhead reaching." (R. 24.)

---

[3]Following his examination of Plaintiff in July 2016, Dr. Fridman found that Plaintiff's limitations included the "inability to [] reach above shoulder level depending on pain level" (R. 391) and that Plaintiff "likely will have limitations with regards to performing overhead activities." (R. 393.)

In short, the ALJ failed to give good reasons for not incorporating the reach and overhead work limitations recommended by Plaintiff's treating physician, Dr. Rawcliffe, which limitations appear to be reasonable upon an objective review of the longitudinal record and other medical opinion evidence upon which the ALJ relied. The failure to address the issue is not inconsequential. "Reaching is an activity 'required in almost all jobs. Significant limitations of reaching ... may eliminate a large number of occupations a person could otherwise do.'" *Acosta v. Barnhart*, 114 F. App'x 7, 10 (1st Cir. 2004) (per curiam) (quoting Social Security Ruling 85–15, 1985 WL 56857, *7). Remand, therefore, is warranted.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court vacate the administrative decision and remand the matter for further proceedings. [4]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

Dated this 21st day of March, 2019.          /s/ John C. Nivison
                                             U.S. Magistrate Judge

---

[4] Because I conclude remand is warranted based on the ALJ's RFC assessment, I do not address Plaintiff's final argument – that the ALJ improperly evaluated Plaintiff's subjective complaints.